#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 21-CR-450-CVE** |
| | ) | EXHIBIT FILED UNDER SEAL |
| **DEFENDANT LEE GOLDESBERRY,** | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S MOTION IN LIMINE

Defendant Lee Goldesberry, by and through his Counsel of record, Andrea Brown, seeks an Order limiting the testimony of Meagan Bartlett, Nathan Bartlett, and Kelsey Hess to prevent them from testifying to any hearsay statements. The Defendant further requests an Order prohibiting the Government from referring to said hearsay statements during all phases of the Defendant's trial, including but not limited to Voir Dire, Opening Statements and Closing Statements.

### FACTS

On October 6, 2021 an Indictment was filed charging Defendant Lee Goldesberry with a single count of Aggravated Sexual Abuse of Minor in Indian County. Dkt. # 2. The Indictment alleges that between May 2017 and September 31, 2017, Mr. Goldesberry engaged in a sex act with M.V., a minor victim.

The Government appears to be seeking to admit evidence that M.V. allegedly disclosed various acts of sex abuse to a family friend, Meagan Bartlett in May of 2020. Per the Government's discovery, Ms. Bartlett made statements to DHS and the authorities that both M.V., and her older sister F.G., had disclosed sexual abuse allegations against their father,

Defendant Goldesberry. Per the Government's discovery, Meagan Bartlett has relayed some of her claims to her father, Nathan Bartlett, who has repeated (third-hand via hearsay within hearsay) some of Ms. Bartlett's claims to DHS and law enforcement.

Both M.V. and F.G. have been interviewed and both denied making these disclosures to Meagan Bartlett. To date, both M.V. and F.G. continue to deny they made the various statements that Meagan Bartlett attributes to them. Specifically, M.V. continues to adamantly deny making any of the below-outlined disclosures to Ms. Bartlett. See Exhibit 1.[1] As a result of M.V.'s and F.G.'s repeated and adamant denials, the Government seeks to admit the hearsay statements Meagan Bartlett claims M.V. and F.G. made by putting Ms. Bartlett on the witness stand.

It is anticipated, through the review of discovery provided, that the Government will attempt to solicit testimony from Meagan Bartlett (and possibly Nathan Bartlett) that M.V. and F.G. made the following disclosures in May of 2020:

- Defendant Goldesberry asked M.V. if she was naked while she was sleeping;
- Defendant told M.V. that if her mother wasn't in the picture, M.V. would be his second choice;
- M.V. didn't want her sister to be involved because she didn't want her to think Defendant was a bad person;
- Defendant has asked to see M.V. naked and asked to touch her;
- M.V. got things that she wanted from Defendant by allowing him to touch her;
- Defendant has made jokes about M.V. performing oral sex on him;
- M.V.'s mother asked F.G. what Defendant had used on her and F.G. said Defendant had used dildos and vibrators on her;
- F.G. was sexually abused the morning that Bartlett took M.V. back to her mother's house;
- The abuse would happen when F.G. was getting ready for bed or taking a shower;

---

[1] An sworn affidavit filed under seal to protect the identify of M.V., the alleged victim, who was a minor child at the time of the events described in the Indictment.

2

- F.G. would skip her nightly routine in order to avoid the abuse by Defendant;
- Defendant would masturbate in the recliner in the living room when the children were home;
- M.V. said Defendant has used dildos, vibrators, and put his fingers inside her for years;
- Neither sibling knew that it was happening to the other;
- M.V. has self-harmed for years because of the sex abuse;
- M.V. has attempted suicide because of the sex abuse;
- F.G. used the sex abuse as a bargaining tool to get things she wanted from Defendant, including being allowed to watch Harry Potter, get a nose ring, and dye her hair;
- F.G. said the abuse started when she was 14 years old and has gotten worse;
- M.V. said the abuse started 3-4 years ago and is still happening;
- M.V. used alcohol and marijuana to cope with the abuse;
- Defendant was sexually abuse by his mother as a child;
- M.V. said that Defendant got into bed with her on multiple occasions when M.V. was naked;
- After Bartlett left M.V. and M.V.'s mother in the bedroom alone to talk, M.V. and M.V.'s mother took a drive. When they returned, M.V. told Bartlett that they had gone to M.V.'s maternal grandmother's house and that M.V. had been given marijuana;
- F.G. said that Defendant told her that if he didn't have her mother, that F.G. would be his second choice;
- After F.G. disclosed the abuse to her mother, her mother stated "Really? Because [Defendant] just spent an hour trying to make [M.V.] feel like she is crazy;"
- F.G. and M.V. both begged Meagan Bartlett not to tell her father out of fear that he would report the abuse;
- F.G. said that Defendant would sleep naked in the living room;
- F.G. said that she has caught Defendant openly masturbating.

Further, the Government seeks to admit evidence that M.V. disclosed the charged sex act – albeit while M.V. maintained the act was not an intentional sexual act, but rather an accident – to forensic interviewer Kelsey Hess in May 2020. M.V. was age 14 years at the time of her forensic interview. M.V. was also 14 years old at the time Megan Bartlett claims M.V. disclosed a myriad of additional sex abuse to Ms. Bartlett. M.V. is currently 16 years old.

F.G. was 18 years old at the time Meagan claims F.G. made disclosures of sexual abuse. It is not disputed that F.G. was a legal adult at the time Meagan Bartlett claims F.G. disclosed abuse. F.G. is currently 20 years old.

## ARGUMENT AND AUTHORITY

The proposed testimony of Meagan Bartlett, Nathan Bartlett and forensic interviewer Kelsey Hess is inadmissible hearsay and should be excluded. Fed.R.Evid. 802 states that hearsay is not admissible unless the law creates a specific exception otherwise. Hearsay is defined as an out of court statement offered to prove the truth of the matter asserted. Fed.R.Evid. 801. It is uncontroverted that the proposed testimony of Meagan Bartlett, Nathan Bartlett and Kelsey Hess is hearsay. As such, we turn to possible exceptions under the law. M.V. is available as a witness, so the Government cannot avail itself of the exceptions outlined in Fed.R.Evid. 804. We turn then to Fed.R.Evid. 803, which provides for the admissibility of hearsay statements under certain circumstances regardless of the availability of the witness, M.V. Fed.R.Evid. 803 offers no path toward admissibility either. These alleged disclosures were not made contemporaneous to the alleged abuse – they were not even made within the same year. The alleged disclosures were not disclosed in an excited state, and they were not used for medial diagnosis or treatment. Thus, the common avenues of admissibility under Rule 803 are not applicable in this case.

It is anticipated the Government may seek to admit the alleged statements to Meagan Bartlett, Nathan Bartlett and Kelsey Hess under the Residual Exception provided in Fed.R.Evid. 807. However, this effort also falls short of the statutory requirements. First, as a procedural matter, the Government must provide written notice of its intent to offer such evidence. The

extent of written notice provided to the Defendant of its intent to admit hearsay at trial was a letter dated March 4, 2022, which reads (in relevant part), "The United States also intends to call Ms. Hess as a fact witness to testify regarding her interview with [M.V.] in May 2020." No notice has been provided to the Defendant of the Government's intent to introduce hearsay from Meagan Bartlett and/or Nathan Bartlett besides summaries of Meagan's and Nathan's interviews provided in discovery. As such, this Motion in Limine and objection to hearsay is filed in an abundance of caution, and not in response to a properly filed notice by the Government.

Second, the Residual Exception to the hearsay rule requires that the hearsay statement be "supported by sufficient guarantees of trustworthiness" before it can be admitted, which may be determined by looking at the circumstances under which the statement was made and the existence of any corroborating evidence. Here, there is absolutely none. The circumstances of M.V.'s and F.G. alleged disclosures to Meagan Bartlett offer no sufficient guarantees of trustworthiness. Meagan Bartlett was the only witness to the alleged disclosures. Meagan Bartlett claimed to have possessed a text message from M.V. verifying the disclosures. However, when asked by law enforcement to produce the text message, Meagan Bartlett then claimed it must have been deleted and thus she was unable to produce it. Perhaps most compelling, both alleged declarants, M.V. and F.G., have specifically and repeatedly denied, and continue to deny, that the above-outlined disclosures were *ever* made to Meagan Bartlett or anyone else. See Exhibit 1.

Third, and finally, to be admissible under the Rule 807 Residual Exception, the alleged hearsay statements must be more probative than any other evidence. The most probative evidence as to the existence of any sexual abuse against M.V. will come from M.V., who is available and willing to testify. Without sufficient guarantees of trustworthiness, including

5

corroboration, and evidence of the hearsay being reliable and highly probative, the hearsay is inadmissible even under the Residual Exception. As such, the offered testimony falls under no exception to the prohibition against hearsay and should be excluded from trial.

Turning to the Government's likely request to allow M.V.'s hearsay statements to the forensic interviewer, Kelsey Hess, the same analysis makes that hearsay similarly inadmissible. While notice appears to have been given to the Defendant via a recent letter, no explanation as to how or why a hearsay exception applies has been provided. The Government has given the Defendant and this Court no reason to believe any exception to the hearsay rule applies in this case. Again, M.V. was 14 years old when she was forensically interviewed. Even under the broadest exceptions in *other jurisdictions* (which do not apply here), a child aged 14 years is too old to qualify for any available Child Hearsay Exception. With M.V. available to testify at trial, there is no necessity for a hearsay exception and none apply here. Any argument that M.V.'s hearsay to forensic interviewer Kelsey Hess is probative falls flat. The hearsay itself is more prejudicial than probative, and does not fall under any hearsay exception. As such, M.V.'s statement to the forensic interviewer should be excluded from trial.

Any mention or introduction of out-of-court statements, including a recorded forensic interview or parroting of hearsay statements made by M.V. or F.G. via Meagan Bartlett, Nathan Bartlett, or the forensic interviewer would violate Defendant Goldesberry's rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. *Idaho v. Wright*, 497 U.S. 805, 819-21 (1990); *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." That clause bars the Government from introducing out-of-court statements which are "testimonial" in nature,

unless the "declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the declarant]." *Crawford*, 541 U.S. at 59.

Finally, In addition to the probative dangers of admitting this proposed evidence, a traditional balancing of Rule 403 is required. This Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Rule 403, Federal Rules of Evidence. *See United States v. Velarde*, 214 F.3d 1204, 1212 (10th Cir. 2000) (remand was necessary for district court to conduct "the necessary Rule 403 balancing" on the record); *United States v. Magnan*, 756 Fed. Appx. 807, 821 (10th Cir. 2018) (unpublished) (district court's reasoning was "insufficient" when court failed to explicitly consider Rule 403 balancing); *United States v. Begay*, 2009 WL 301828 at *5-6 (10th Cir.) (unpublished) (approving district court's exclusion of evidence under Rule 403); *United States v. Grigsby*, 272 Fed. Appx. 738 (10th Cir. 2008) (unpublished) (approving district court's order of new trial based on Rule 403 analysis). This Court should conclude that the hearsay should not be mentioned or admitted in the presence of a jury.

Respectfully submitted,

*s/ Andrea A. Brown*
Andrea A. Brown, OBA#22682
Swab, Stall, Horton, & Fu
2021 S. Lewis Ave., Suite 520
Telephone: (918) 625-1098
E-mail: abrown@swabstall.com
*Counsel for the Defendant*

**CERTIFICATE OF SERVICE**

  I certify that on date of filing, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant(s):

Chantelle Dial
Assistant United States Attorney
Office of the United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119

               *s/Andrea A. Brown*
               Andrea A. Brown

# Exhibit 1

# Filed Under Seal