```
                 UNITED STATES DISTRICT COURT FOR THE

                    NORTHERN DISTRICT OF OKLAHOMA


UNITED STATES OF AMERICA,

              Plaintiff,

vs.                                          CASE NO. 21-CR-450-CVE

RAYMOND LEE GOLDESBERRY,

              Defendant.
```

TRANSCRIPT OF PROCEEDINGS
MARCH 8, 2022
BEFORE THE HONORABLE CLAIRE V. EAGAN, JUDGE PRESIDING

**PRETRIAL CONFERENCE**

A P P E A R A N C E S

   MR. KYLE McWATERS, Assistant United States Attorney, Northern District of Oklahoma, Tulsa, Oklahoma, appeared on behalf of the plaintiff.

   MS. ANDREA BROWN, Attorney at Law, Tulsa, Oklahoma, appeared on behalf of the defendant.

Reported by Greg Bloxom, RMR, CRR

```
 1  PROCEEDINGS:
 2  ---------------------------------------------------------------
 3          THE DEPUTY COURT CLERK:  This is United States of
 4  America vs. Raymond Lee Goldesberry, case number 21-CR-450-CVE.
 5      Counsel, please enter your appearance for the record.
 6          MR. McWATERS:  Kyle McWaters on behalf of the United
 7  States.
 8          THE COURT:  Thank you.
 9          MS. BROWN:  Andrea Brown on behalf of Mr. Goldesberry.
10          THE COURT:  Thank you.
11      We're here today for a pretrial conference.  First, I want
12  to advise you that you are currently fifth up on my March 21st
13  trailing docket.  You are also tentatively on the list for a
14  visiting judge on March 28th if we can't get to it that week.
15      So, let me start with the United States.  Mr. McWaters, how
16  many days do you expect this will take to try?
17          MR. McWATERS:  We expect the trial to last two to
18  three days, Your Honor.
19          THE COURT:  All right.  How many witnesses?
20          MR. McWATERS:  Twelve witnesses, Your Honor.
21          THE COURT:  All right.  And have you disclosed those
22  witnesses to Ms. Brown?
23          MR. McWATERS:  I'm not sure.  I can do that.
24          MS. BROWN:  (SHAKES HEAD FROM SIDE TO SIDE)
25          THE COURT:  Will you after this hearing?
```

1   **MR. McWATERS:** Yes, Your Honor.
2   **THE COURT:** Great.
3   All right. And with regard to subpoenas, I'll just, as in
4   every case, you know we're in strange times, I don't know what
5   day we're going to get to your trial, so if you just want to
6   subpoena witnesses to be here on the first day of the trial
7   week and then you can just notify them that they'll be
8   recognized back for the trial date, or you can have them appear
9   if they're reluctant and I can recognize them back on the first
10  day of the week.
11  **MR. McWATERS:** Thank you, Your Honor.
12  **THE COURT:** All right. So this morning I did receive
13  your 404(b) notice, docket number 28, and Ms. Brown hasn't had
14  a chance to respond to that yet, so I'll just note that we have
15  it.
16  Other than that notice, any other evidentiary issues that
17  we should advise the defendant of today?
18  **MR. McWATERS:** Evidentiary? No, Your Honor. I will
19  say that the government did send Ms. Brown our expert
20  disclosures on Friday, --
21  **THE COURT:** Okay.
22  **MR. McWATERS:** -- so those were sent to her and so she
23  already has those.
24  **THE COURT:** Okay. Thank you.
25  All right. Ms. Brown, on behalf of Mr. Goldesberry, how

1  many -- do you agree that this would be two to three days?
2       **MS. BROWN:**  I don't think there's any way we get
3  through it in two days.  I think three is reasonably --
4       **THE COURT:**  Okay.
5       **MS. BROWN:**  -- barring unforeseen circumstances.
6       **THE COURT:**  All right.  So at least three.  And, of
7  course, you don't have to disclose this if you don't want to,
8  but do you believe that you might be calling additional
9  witnesses?
10       **MS. BROWN:**  I think it's possible.  We could have up
11  to no more than two character witnesses.  I had anticipated
12  about nine on their side, so they're probably calling the only
13  people I would call.
14       **THE COURT:**  Probably.  So, they have a way of doing
15  that, don't they?
16       **MS. BROWN:**  That's fine with me.
17       **THE COURT:**  With regard to the experts, you've
18  received those disclosures?
19       **MS. BROWN:**  I have.  The only evidentiary issues I
20  foresee are obviously I need to respond to the 404(b) motion
21  which we'll be objecting to and Your Honor can take up at her
22  pleasure.
23     The expert is a child hearsay forensic interviewer.  The
24  victim was 14 at the time of disclosure, so I anticipate
25  objecting to the child hearsay, but really this is, other than

1  child hearsay, a very straightforward case.
2          **THE COURT:** All right. And if you would, regardless
3  of whether I am the trial judge or the visiting judge, would
4  you kindly advise on the morning of trial if you would like any
5  witness names mentioned to the jury during voir dire to
6  determine whether or not anybody knows them. All right.
7     So, let me ask you, this is a very serious case. Would the
8  parties agree that I'm reading this correctly, that, if
9  convicted, the child was not 12 years old at the time of the
10 events? Is that correct?
11         **MR. McWATERS:** That's correct, Your Honor.
12         **THE COURT:** So Mr. Goldesberry is facing not less than
13 30 years or life. Is that accurate?
14         **MR. McWATERS:** That is the government's position, Your
15 Honor.
16         **THE COURT:** Is that what you read?
17         **MS. BROWN:** Our position is that she was 12 at the
18 time, in the event of conviction, but she wasn't under 12.
19         **THE COURT:** Do we have an undisputed birth date?
20         **MS. BROWN:** We have an undisputed birth date. The
21 child says that -- the action itself is undisputed. Whether it
22 was intention or accidental is the issue. There's not a
23 disputed birth date. The child said it happened approximately
24 two years prior to disclosure, and my client in an interview I
25 believe said it happened approximately three years prior to

1  disclosure, and she was 14 at the time of disclosure.
2          **THE COURT:** So then there's a question of fact as to
3  the date of the event?
4          **MS. BROWN:** Yes. It was a delayed disclosure.
5  However, my client does maintain that he remembers the event
6  occurring and that he knows that she was 12 at the time.
7          **THE COURT:** All right. So let's look at the
8  indictment then. The grand jury charged that it happened
9  between May and September of 2017. What is the birth date of
10 the victim? This is a relatively important fact for the
11 purposes of sentencing.
12         **MS. BROWN:** Absolutely, Your Honor. The child's date
13 of birth is September 20 --
14         **THE DEFENDANT:** 14th.
15         **MS. BROWN:** 14th of 2005. Thank you.
16         **THE COURT:** So, if it happened before September 14th,
17 2017, she was not 12, and if it happened after she was. So
18 that's a question of fact that's going to the jury. Is that
19 your understanding, Mr. McWaters?
20         **MR. McWATERS:** That is, Your Honor.
21         **THE COURT:** Okay. All right. So now let's get to
22 something that is important to the defendant. Has the United
23 States made an offer?
24         **MR. McWATERS:** The United States has made an offer,
25 Your Honor, and I would ask leave to put some relevant details

```
 1  of that and make a record of that.
 2          THE COURT:  Is there any objection to making a record
 3  of that?
 4          MS. BROWN:  No objection.  I would prefer that.
 5          THE COURT:  Thank you.
 6          MR. McWATERS:  Thank you, Your Honor.
 7     So, the government's final offer removed any base
 8  imprisonment requirement.  It was an offer for an 11(c)(1)(C)
 9  to a lesser charge of abusive sexual contact with a minor in
10  Indian Country.
11          THE COURT:  Okay.  What section?
12          MR. McWATERS:  18, U.S.C., 1151, 1153, and 2244(a)(5),
13  abusive sexual contact with a minor in Indian Country.
14          THE COURT:  Okay.  And what are the statutory
15  parameters of punishment?
16          MR. McWATERS:  I believe it's up to life imprisonment
17  with no minimum.
18          THE COURT:  Okay.  And what was the (c)(1)(C) offer?
19          MR. McWATERS:  It was that the government offered to
20  cap its imprisonment recommendation at 14 years which would be
21  the high end of the anticipated guidelines for that code
22  section.  The offer permitted Mr. Goldesberry to file departure
23  and variance waivers and request any term of imprisonment.
24  That was the -- those were the offers of the stipulation.
25          THE COURT:  All right.  And was there any issue -- is
```

1  there any restitution issue in this case?
2         **MR. McWATERS:**  Not at this time.  The government is
3  unaware.  But we did have in the plea agreement that if the
4  government does come in receipt of any information of financial
5  losses that that would be a part of the agreement.
6         **THE COURT:**  Okay.  Was there any forfeiture as part of
7  the agreement?
8         **MR. McWATERS:**  No, Your Honor.
9         **THE COURT:**  All right.  And a fine?
10        **MR. McWATERS:**  Other than the SMA, I don't believe so,
11 Your Honor.
12        **THE COURT:**  And what about supervised release?  Is
13 that up to me?
14        **MR. McWATERS:**  I believe so, Your Honor.
15        **THE COURT:**  I mean, in this type of charge it's
16 important to know.
17        **MR. McWATERS:**  At least five years --
18        **THE COURT:**  Okay.
19        **MR. McWATERS:**  -- of supervised release.
20        **THE COURT:**  Okay.  So, let me start with you,
21 Ms. Brown.  Did you receive --  Was that a written offer,
22 Mr. McWaters?
23        **MR. McWATERS:**  It was, Your Honor.  The government has
24 been attempting to negotiate since November and this most
25 recent offer was extended on February 28th after we received

1  and produced additional photos of the family and 302s and some
2  witness prep meetings and things of that nature.
3          **THE COURT:** All right. So, looking at the statute, it
4  looks like it's any term of years or for life. And if the
5  sexual contact that violates the section -- other than (a)(5).
6  Okay. It was an (a)(5), so never mind. Okay. So there would
7  be no impact of the age of the child on this statutory maximum?
8          **MR. McWATERS:** Correct. And the government would have
9  filed a superseding information on this.
10         **THE COURT:** Okay. So, let me first with ask you,
11 Ms. Brown. Did you receive that offer?
12         **MS. BROWN:** I did, and I conveyed it to my client. We
13 discussed it extensively and he has declined it, but the court
14 is more than welcome to inquire of my client.
15         **THE COURT:** But I will ask you this -- well, I will
16 ask you: So, did you give him your best advice as to whether
17 or not to accept it?
18         **MS. BROWN:** I did.
19         **THE COURT:** Okay. So, Mr. Goldesberry, am I
20 pronouncing your name correctly?
21         **THE DEFENDANT:** Yes, ma'am.
22         **THE COURT:** Okay.
23         **THE DEFENDANT:** Yes, Your Honor.
24         **THE COURT:** Did Ms. Brown convey that offer to you?
25         **THE DEFENDANT:** Yes, ma'am.

1    **THE COURT:** Okay.
2    **THE DEFENDANT:** Yes, Your Honor.
3    **THE COURT:** Okay. And is your understanding of that
4  offer consistent with the representation Mr. McWaters just
5  made?
6    **THE DEFENDANT:** Yes, Your Honor.
7    **THE COURT:** Did you get advice of counsel as to
8  whether or not to accept that offer?
9    **THE DEFENDANT:** Yes, Your Honor.
10   **THE COURT:** And having received advice of counsel, did
11 you make your own independent decision as to whether or not to
12 accept that offer?
13   **THE DEFENDANT:** Yes, Your Honor.
14   **THE COURT:** Did you accept or reject that offer?
15   **THE DEFENDANT:** I rejected that offer, Your Honor.
16   **THE COURT:** All right. All right. So, of course,
17 we'll probably make another record the morning of trial not
18 only to confirm that but in case any subsequent offers have
19 been made.
20    All right. So I'm going to ask you on the morning of trial
21 to please be here at 9:15 so we can have at least 15 minutes
22 outside the presence of the jury to make final records. And if
23 you would stay in touch with Ms. Portilloz, it's 699-4713, she
24 will let you know on a daily basis, if necessary, where you
25 stand on my trial docket and where you stand on a visiting

1  judge's trial docket.
2     So, anything -- anything on behalf of the United States,
3  any questions, Mr. McWaters?
4          **MR. McWATERS:**  No, Your Honor.  We do have pending
5  stipulations for Indian Country and defendant's Indian status.
6          **MS. BROWN:**  I have them with me today.
7          **THE COURT:**  Great.  Do you mind if they're filed of
8  record?
9          **MS. BROWN:**  I have no problem with that.  Thank you.
10         **THE COURT:**  Thank you very much, Ms. Brown.
11    Do you want to go ahead and date this?  Do you mind if
12 Mr. McWaters puts the date on it?
13         **MS. BROWN:**  That would be great.  Thank you.
14         **THE COURT:**  All right.  The two stipulations have been
15 fully executed and they will be filed separately of record.
16 And, as is my practice, I will read the stipulations to the
17 jury following opening statements.
18    Is there anything further on behalf of the United States?
19         **MR. McWATERS:**  Not at this time, Your Honor.
20         **THE COURT:**  Okay.  Ms. Brown, anything further on
21 behalf of the defendant?
22         **MS. BROWN:**  Two questions.
23         **THE COURT:**  Yes.
24         **MS. BROWN:**  Were we to have the pleasure of being in
25 front of you on the week of the 21st, will you allow additional

1  voir dire or will the court be doing that?
2      **THE COURT:** I do the entire voir dire, but I review
3  your written voir dire questions to do those that I deem
4  appropriate, but then I always ask the lawyers before I ask to
5  pass for cause if they have any follow-up questions on anything
6  that I might inquire further.
7      **MS. BROWN:** And as the court is conducting its voir
8  dire, does the court entertain objections for cause at that
9  time or at a side bar later?
10     **THE COURT:** I ask you to approach immediately if you
11 have an objection for cause. I'd thank you if you'll do that
12 because it saves us a lot of time.
13     **MS. BROWN:** I completely agree. Thank you.
14    And my last question is: Does the court have a specific
15 time limit for closing argument?
16     **THE COURT:** We do it by case and we ask the parties to
17 see if they can agree. It's usually 30 minutes or --
18     **MS. BROWN:** I can do 30 minutes.
19     **THE COURT:** Okay. And if it's unusual and you feel
20 like you need more, you just talk to the other side. Whatever
21 the parties agree to, I usually allow.
22     **MS. BROWN:** Thank you, Your Honor.
23     **THE COURT:** Thank you.
24    All right. Thank you. And if you have any other
25 questions, feel free to call Ms. Portilloz because she knows my

```
1   practices by heart.
2       All right.  Thank you.  We'll be in recess in this matter.
3           MS. BROWN:  Thank you, Judge.
4           MR. McWATERS:  Thank you.
5           THE COURT:  We're staying.  Thanks.
6       (PROCEEDINGS CLOSED)
```

### REPORTER'S CERTIFICATION

I CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

CERTIFIED: *s/Greg Bloxom*
Greg Bloxom, RMR, CRR
United States Court Reporter
333 W. 4th Street, RM 411
Tulsa, OK 74103
(918)699-4878
greg_bloxom@oknd.uscourts.gov